UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) <br> ECF Case |
|---|---|
| This document relates to: <br> *Thomas Burnett, Sr., et al. v. The Islamic Republic of Iran, et al.* | 15-cv-9903 (GBD)(SN) <br> ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF IAN L. PESCAIA'S MOTION FOR ENTRY OF PARTIAL FINAL DEFAULT JUDGMENTS ON BEHALF OF A PLAINTIFF WHO WAS NOT AN IMMEDIATE FAMILY MEMBER OF A 9/11 DECEDENT**

**(BURNETT XXXI)**

For the reasons set forth below and in the accompanying Declaration of John Eubanks ("Eubanks Declaration"), Plaintiff Ian L. Pescaia, by and through his counsel, Motley Rice LLC, respectfully moves the Court for an Order entering partial final default judgment against the Iran Defendants[1] on his behalf and awarding him (1) solatium damages for the losses he suffered as the functional equivalent of a spouse to 9/11 decedent Christine A. Snyder in the same per plaintiff amount of $12,500,000.00 previously awarded by this Court to other spouses in this multidistrict litigation; (2) prejudgment interest at the rate of 4.96 percent *per annum*, compounded annually, for the period from September 11, 2001 until the date of the judgment; and (3) permission for Mr. Pescaia to seek punitive damages or other damages at a later date, and for all other similarly situated Plaintiffs to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

---

[1] Plaintiffs in *Burnett/Iran* sued, served, and subsequently obtained a default judgment as to liability against the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran (collectively, "the Iran Defendants") in connection with the death of Plaintiffs' decedents in the 9/11 attacks. Plaintiffs in *Arias* sued, served, and subsequently obtained a default judgment as to liability against the Islamic Republic of Iran.

Mr. Pescaia brings this motion in light of this Court's previous orders granting permission to allow *Burnett* plaintiffs whose damages judgments had not previously been awarded to move for this relief. Mr. Pescaia seeks this relief as the functional equivalent of a husband to 9/11 decedent Christine A. Snyder arising out of the intimate nature of their emotional connection, the anguish and grief he suffered as a result of her death, and the lasting impact this loss has inflicted upon him. Because Mr. Pescaia's relationship with Christine A. Snyder was functionally equivalent to that of a husband, Mr. Pescaia should be awarded solatium damages under the Foreign Sovereign Immunities Act, applicable case law, and the law of the case.

Plaintiffs in *Burnett* sued the Iran Defendants in connection with the deaths of plaintiffs' decedents in the 9/11 attacks. On December 1, 2016, all plaintiffs in the action *Burnett, et al. v. Islamic Rep. of Iran, et al.,* No. 15-cv-9903 (GBD)(SN) ("*Burnett*"), moved for judgment as to liability only. *See* 15-cv-9903, ECF Nos. 65, 66 (amended on December 6, 2016, *see* 15-cv-9903, ECF Nos 68, 69). On January 31, 2017, the Court granted the *Burnett* Plaintiffs' application for judgment as to liability only. *See* 15-cv-9903, ECF No. 85. Plaintiff Ian L. Pescaia relies on that judgment as to liability only for his request for default judgment as to solatium damages.

I.  **Procedural Background**

Addressing the availability of solatium damages to non-immediate family members, this Court has previously addressed the criteria necessary to establish that a claimant had the requisite "functional equivalent" relationship with a 9/11 decedent to be treated the same as an immediate family member for purposes of solatium damages. *See* ECF Nos. 3363 and 3676. The factors considered by the Court for determining whether domestic partners and fiancées were functional equivalents of a spouse included duration of the relationship, the degree of mutual financial dependence and investments in a common life together, the duration of cohabitation, and the presence or absence of a formal engagement. *See id*. at 14-15. The factors considered by the Court

for determining whether stepsiblings or stepparents were functional equivalents of a decedent included the age of the decedent at the time when the stepsibling or stepparent became part of the family, whether the stepsibling or stepparent continuously cohabited with the decedent, and whether the stepsibling or stepparent established that he or she otherwise had a close and longstanding relationship. *See id. at* 15-16; *see also* ECF No. 3676 at 13-14. For stepsiblings or stepparents who became part of the same family when the decedent (and stepsibling) were in their early childhood (roughly birth through age eight), and who lived together for at least two years, the Court deemed them fully functional equivalent to biological siblings and found them entitled to full solatium damages. *See* ECF No. 3363 at 15; *see also* ECF No. 3676 at 13-14. For stepsiblings or stepparents who became part of the same family after the decedent reached early childhood but while still living in the family home (roughly ages nine through 17), the Court would award solatium damages reduced by one-half. *Id.* If the decedent was aged 18 or above, then the stepsiblings or stepparents would not be entitled to solatium damages. The analysis for stepchildren followed this same pattern of when the stepchild joined the family: birth through age eight (full solatium); age nine through age 17 (half solatium); age 18 and older (no solatium). ECF No. 3363 at 16.

II.     **The *Burnett* Plaintiffs**

The *Burnett* Plaintiffs filed suit on December 18, 2015, against the Iran Defendants. Service on the Central Bank of Iran was effectuated on March 18, 2016, and on Iran and the IRGC on September 14, 2016. *See* 15-cv-9903, ECF No. 67 at ¶¶ 3-4. At Plaintiffs' request, the Clerk of the Court issued a Certificate of Default as to the Iran Defendants on December 5, 2016. *See* 15-cv-9903, ECF No. 67. On December 1, 2016, Plaintiffs requested judgment as to liability against the Iran Defendants. *See* 15-cv-9903, ECF Nos. 65, 66. That application was amended on December 6, 2016 after the Clerk of the Court issued a Certificate of Default on December 5, 2016.

*See* ECF Nos. 68, 69. The Court granted judgment as to liability against the Iran defendants in favor of all plaintiffs on January 31, 2017. *See* 15-cv-9903, ECF No. 85.

For the reasons below as well as those set forth in prior motions for judgment for solatium damages made on behalf of other *Burnett* plaintiffs, Plaintiff Ian L. Pescaia now respectfully requests that this Court grant the proposed Order, filed with this motion, awarding him: (1) solatium damages for the losses he suffered as the functional equivalent of the husband of Christine A. Snyder in the amount of $12,500,000.00; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually, for the period from September 11, 2001 until the date of the judgment; and (3) permission for him to seek punitive damages or other damages at a later date, and for all other similarly situated *Burnett* Plaintiffs to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

**III.     Damages Under § 1605A**

Section 1605A of the Foreign Sovereign Immunities Act ("FSIA") creates an exception to sovereign immunity allowing a foreign state to be held accountable for acts of terrorism or the provision of material support or resources for acts of terrorism where the acts or provision of support or resources were engaged in by an official, employee, or agent of the foreign state while acting within the scope of his or her office, employment, or agency. 28 U.S.C. § 1605A(a)(1). Under 28 U.S.C. § 1605A ("Section 1605A"), which applies to the claims against Iran, damages are available under the federal law and include money damages "for personal injury or death." *See* 28 U.S.C. §1605A(a)(1) and (c)(4). The damages available to plaintiffs in a Section 1605A action include "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c)(4). Courts addressing the damages available under the statute have held that, among other damages recoverable, "estates of those who [died] can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional

4

injury; and all plaintiffs can recover punitive damages." ECF No. 2623 at 2-3, quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010).

Accordingly, the Plaintiff identified in Exhibit A, Ian L. Pescaia, is entitled to solatium damages based on this Court's previous determinations in the amounts as previously established and applied by this Court in this and other related cases arising from the 9/11 Attacks. Moreover, as indicated below, Plaintiff Ian L. Pescaia is also entitled to prejudgment interest of 4.96% per annum, compounding annually, on his solatium award running from September 11, 2001 until the date of judgment.

### A.     Solatium Damages

Section 1605A specifically provides for solatium damages. Under that provision, family members of the decedents may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." *Dammarell v. Islamic Republic of Iran,* 281 F.Supp. 2d 105, 196 (D.D.C. 2003), *vacated on other grounds,* 404 F.Supp. 2d 261 (D.D.C. 2005). Other courts have previously noted that "[a]cts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran,* 667 F. Supp. 2d 8, 22 (D.D.C. 2009). In cases brought under this exception to the FSIA, solatium claims have therefore been treated as comparable to claims for intentional infliction of emotional distress, in which the immediate family members of the decedent are treated as direct victims. *See, e.g. Salazar v. Islamic Republic of Iran,* 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005)("[c]ourts have uniformly held that a terrorist attack—by its nature—is directed not only at the victims but also at the victims' families."); *Surette v. Islamic Republic of Iran,* 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (treating solatium claim as "'indistinguishable' from the claim of intentional infliction of emotional distress.") (quoting

5

*Wagner v. Islamic Republic of Iran,* 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)). Accordingly, this Court has previously awarded solatium damages to "immediate family members" who, though not physically present at the site of the terrorist attacks, were nevertheless intended victims of the terrorist activities. *See e.g.* ECF. Nos. 3358, 3300.

### 1. Nature of the Relationship — "Functional Equivalent" of Immediate Family Members

In defining those family members eligible to make a claim for solatium damages, this Court previously determined that spouses, parents, children and siblings who survived the September 11, 2001 deaths of their loved ones were entitled to recover for their solatium losses, and also set forth a framework for other familial relationships that fell outside of those four categories. *See* ECF Nos. 3363, 3676. In this Court's October 14, 2016 Report and Recommendation, adopted in pertinent part by Judge Daniels (ECF No. 3384), the Court recognized that, in addition to awarding damages to individuals considered traditional "family members," the Court may also award damages to non-immediate family members who meet certain criteria establishing that she or he had the "functional equivalent" of an immediate family member relationship with a September 11, 2001 decedent. These categories of non-immediate family members included fiancées and domestic partners, step-relatives, aunts, uncles, nieces, nephews, and cousins. *See* ECF No. 3363.

In that Report, the Court identified factors the Court would consider as relevant for determining whether, for awarding damages, a domestic partner would be considered the "functional equivalent" of a spouse and whether a stepsibling would be considered the "functional equivalent" of a sibling. The factors that the Court identified as relevant in the context of domestic partnership are "the duration of the relationship, the degree of mutual financial dependence and investments in a common life together, the duration of cohabitation and the presence or absence of a formal engagement." *Id*. at 14-15. The framework that the Court adopted in the context of

6

step-relations is this: "… stepsiblings who became part of the family when the decedent was in early childhood (roughly birth through age eight) may be deemed fully functional equivalent to biological parents or siblings and shall be entitled to full solatium damages and stepchildren who were in the same range when the decedent became part of their family shall be deemed fully equivalent to biological children," ". . . stepsiblings who became part of the family when the decedent had passed early childhood but was still living in the family home and undergoing secondary education (roughly ages 9 through 17) may be entitled to solatium damages reduced by one-half, and stepchildren who were in this age range when the decedent who became part of the family shall receive half damages as well," and ". . . stepsiblings who became part of the decedent's family when the decedent had nearly finished his secondary education (roughly age 18 and above) and/or did not cohabit with the decedent for a significant period of time will likely not be deemed functional equivalents of immediate family members and shall not be illegible for solatium awards, with the same being true for stepchildren who were this age when the decedent became part of their family. In all cases, the Court will recommend solatium awards only for those step-relatives that cohabited with the decedent and establish that they otherwise had a close and longstanding relationship." *Id*. at 15-16.

The information in the accompanying Declaration of Ian L. Pescaia confirms that Mr. Pescaia meets the Court's prior standard for "functional equivalence" entitling him to an award for solatium damages.

    **2.**    **Quantum of Damages**

To fashion a solatium award adequately compensating the surviving family members in the litigation against Iran, this Court previously recognized that the immediate family members of those killed in the September 11 terrorist attacks suffered and continue to suffer profound agony and grief and, "[w]orse yet, ... are faced with frequent reminders of the events of that day." *See*

7

ECF Nos. 2623, 2618 at 10-12. Given the "extraordinarily tragic circumstances surrounding the September 11th attacks, and their indelible impact on the lives of the victims' families," The Court ordered that solatium damages in the following amounts would be awarded to the immediate family members of those individuals killed on September 11, 2001:

| Relationship to Decedent | Solatium Award |
|:---:|:---:|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

*Id.* at 4.

As indicated above, the Court concluded that the damages framework above would be used when assessing solatium damages awards for qualifying non-immediate family members, except that the value for step-relatives would be dependent on the age of the two step-relatives at the time the relationship began. See ECF Nos. 3363 at 16; 3676 at 13-14.

The losses claimed in this motion are legally and factually comparable to those suffered by other claimants previously awarded solatium damages in this litigation. The death here was sudden and unexpected and was the result of the terrorism defendants' extreme acts of malice. The decedent was a civilian whose death was intended to create an environment of fear and terror. The claimant here was not an attenuated victim — he had an intimate relationship with Ms. Snyder and was directly and irrevocably harmed by the terrorist acts and consequences. Accordingly, the presumptive values for solatium damages previously adopted by the Court for spouses in the other *Burnett* judgments should apply equally to Plaintiff Pescaia's claims.

### 3. The relationship between Ian L. Pescaia and Christine A. Snyder

Christine Ann Snyder was a certified arborist from Hawaii who had recently visited New York City after attending an American Forestry Conference in Washington, D.C. She was returning to her home in Hawaii as a passenger on United Airlines Flight 93 and was killed along with other passengers and crew after terrorists hijacked Flight 93 and crashed the passenger jet into a field in Somerset County, Pennsylvania. *See* Exhibit B, Declaration of Ian L. Pescaia at ¶¶ 4-5, 21. At the time of the 9/11 Attacks, Ian Pescaia was Christine's domestic spouse and dependent. Christine and Ian had been living together for approximately seven years as of September 11, 2001, although they had known each other for approximately seventeen years. *Id*. at ¶ 6.

Christine and Ian first met when they were both teenagers attending Kalaheo High School in Kailua, Hawaii. They began dating nine years later in 1993. In 1994, Christine and Ian began living together in Ian's parents' home in Kailua, Hawaii. *Id*. at ¶ 7. Christine and Ian later bought a townhouse together and lived as domestic partners in Kailua, Hawaii, from 1997 until her death on September 11, 2001. Christine and Ian also became engaged in 1997. *Id*. at ¶¶ 8-9. On June 2, 2001, Christine and Ian exchanged wedding vows in Oahu, Hawaii, before a gathering of their closest friends and relatives in a wedding ceremony presided over by the Reverend Janice Schmidt. Reverend Schmidt also issued a Certificate of Marriage to Christine and Ian. *Id*. at ¶ 10.

Although Christine and Ian had exchanged wedding vows on June, 2, 2001, they had not obtained a Marriage License from the State of Hawaii prior to Christine's death. But as further evidence of their marital union, Ian filed IRS Form 1040 (U.S. Individual Income Tax Return) for the 2001 tax year with his filing status listed as "Married Filing Jointly" due to his marriage to Christine in June of 2001. Additionally, in the weeks after the events of 9/11, Ian received a letter

with condolences related to Christine's passing from the late Honorable Daniel K. Inouye, U.S. Senator from Hawaii. Senator Inouye noted in the letter that during his visit with Christine in his Washington, D.C., office on September 5, 2001, he observed that "[T]houghts of you were on [Christine's] mind, and I noticed her gently caressing her wedding ring during our meeting." *Id*. at ¶¶ 11-14.

With the assistance of a filing by legal counsel, the Hawaii First Circuit Court appointed Ian as Special Administrator of Christine's estate as her surviving spouse in May of 2002. After his appointment as Special Administrator of Christine's estate, Ian began the process of filing a claim with the September 11th Victim Compensation Fund of 2001 ("VCF") seeking compensation for Christine's wrongful death as her spouse and the personal representative of her estate. However, Charles O. Snyder, Christine's father, successfully petitioned the Hawaii Probate Court to replace Ian as Special Administrator of Christine's estate due to the lack of an executed Marriage License under Hawaii law at the time of Christine's death. In his capacity as the Special Administrator, Christine's father later withdrew Ian's claims that he had filed with the VCF on behalf of Christine's estate. *Id*. at ¶¶ 15-18.

Ian had Christine's cremated remains interred in his family's cemetery plot located in Nuuanu Valley, Honolulu, Hawaii on March 17, 2002, after they were returned to him following the events of 9/11. Traumatized by all of the reminders of Christine's absence, Ian moved out of their Kailua townhouse along with Christine's beloved cat, Horace, within a year of Christine's death. *Id*. at ¶¶ 19-20. Due to his overwhelming and painful memories of the loss of Christine, his wife and the love of his life, Ian later decided to leave Hawaii and move to Utah. Ian has stated that he will never fully recover from the loss of his wife due to the terrorist attacks of 9/11. *Id.* at ¶¶ 21-22. Based upon their demonstrated and public commitment to a common life together, their

formal wedding ceremony, their executed Certificate of Marriage issued by Reverend Janice Schmidt, and other documents confirming Ian's status as Christine's spouse at the time of her death, Plaintiffs submit that Ian L. Pescaia should be considered the functional equivalent of a spouse to Christine Ann Snyder and should be entitled to the presumptive judgment amount of $12,500,000.00 for a spouse of a 9/11 decedent. As referenced above, the duration of Christine and Ian's relationship, the degree of their mutual financial dependence and investments in a common life together, the lengthy duration of their cohabitation, and the occurrence of their formal wedding ceremony all support this conclusion.

Based on the facts set forth above, Plaintiff Ian L. Pescaia respectfully submits that solatium damages be awarded to him in the amount of $12,500,000.00.

### B. Punitive Damages

Under the FSIA, plaintiffs are also entitled to punitive damages. *See* 28 U.S.C. §1605A(c)(4). In prior circumstances within this MDL, the Court has adopted a ratio of 3.44 (punitive) to 1 (compensatory). *See* ECF No. 2623. However, more recently within this MDL, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice. *See* ECF No. 3363 at 28. This recommendation was adopted by the Court. *See* ECF No.3384 at 6.

In light of the Court's decision in related cases within this MDL to defer determination of punitive damages issues until a later stage of the litigation, Plaintiff herein requests permission to address the issue of punitive damages at a later date. *See, e.g.,* ECF No. 3666 (Judge Daniels's order in *Burnett/Iran*, authorizing other plaintiffs to make application for punitive damages at a later date consistent with any future rulings of the Court).

### C. Prejudgment Interest

As in prior applications, Plaintiff Pescaia asks that this Court direct that prejudgment interest of 4.96% *per annum*, compounded annually, on the solatium award running from September 11, 2001 until the date of judgment be assessed, as was done previously in other judgments issued for *Burnett* plaintiffs, as well as for other plaintiffs in this consolidated litigation.

## IV. Conclusion

For all the reasons set forth herein, as well as those set forth in the previous submissions of the *Burnett* plaintiffs and other plaintiffs, Plaintiff Ian L. Pescaia respectfully requests that this Court grant the proposed order included with this motion: (1) awarding him solatium damages of $12,500,000.00 as the functional equivalent of a husband to 9/11 decedent Christine A. Snyder; (2) awarding prejudgment interest of 4.96% *per annum*, compounded annually, on his solatium award running from September 11, 2001 until the date the judgment is entered; and (3) permitting Plaintiff Pescaia to seek punitive damages or other damages at a later date, and for all other similarly situated *Burnett* Plaintiffs to submit applications for damages awards in later stages to the extent such awards have not been previously addressed.

Dated: June 17, 2024

Respectfully Submitted,

MOTLEY RICE LLC

BY:   /s/ John M. Eubanks
John M. Eubanks, Esq.
Jodi Westbrook Flowers, Esq.
Robert T. Haefele, Esq.
John C. Duane, Esq.
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: 843-216-9218
Fax: 843-216-9450
Email: jeubanks@motleyrice.com

*Attorneys for the Burnett Plaintiffs*