UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN)<br>ECF Case |
|---|---|
| This document relates to:<br>*Thomas Burnett, Sr., et al. v. The Islamic Republic of Iran, et al.* | 15-cv-9903 (GBD)(SN)<br>ECF Case |

**[PROPOSED] ORDER OF PARTIAL FINAL DEFAULT JUDGMENT**

**(*BURNETT* XXXI)**

On June 17, 2024, Plaintiff Ian L. Pescaia moved for default judgment against the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran (collectively, the "Iran Defendants"). *See* ECF No. 9912. Mr. Pescaia moves for solatium damages on the grounds that his close relationship with Christine A. Snyder, who was killed aboard United Airlines Flight 93 on September 11, 2001, merits a finding that he is the functional equivalent of her spouse despite not being an immediate family member of the victim. The Court grants this motion.

**DISCUSSION**

The Court assumes familiarity with the general background of this case. The procedural history of the Plaintiffs' Motion is addressed as part of the discussion of service on Iran.

**I.    Iran Is Liable to These Plaintiffs and Was Properly Served**

Iran is liable to this Plaintiff and was properly served. Service on a foreign sovereign must be achieved by one of the four means in 28 U.S.C. § 1608(a)(1)–(4), in descending order of preference from 28 U.S.C. § 1608(a)(1) to 28 U.S.C. § 1608(a)(4). Iran may not be served under 28 U.S.C. § 1608(a)(1) or 28 U.S.C. § 1608(a)(2) because there is no special arrangement between the United States and Iran, and no international convention applies. The Plaintiffs attempted

service through a mailing by the Clerk of the Court as required by 28 U.S.C. § 1608(a)(3), which failed when Iran rejected the mailing. Service was thus achieved by diplomatic means. The U.S. State Department transmitted service papers to the Swiss Government, which presented them to Iran. Plaintiffs served an Affidavit of Service with the Court. *See* 15-cv-9903, ECF No. 64. Iran, which has never appeared in this case, defaulted, and a Clerk's Certificate of Default was issued (15-cv-9903, ECF No. 67), followed by a default liability judgment (15-cv-9903, ECF No. 85).

The complaint in this matter was amended several times to add additional plaintiffs not named in the original complaint to the action in accordance with the procedure approved by the Court in its order at ECF No. 5234. The specific pleading adding a plaintiff to the relevant action is noted as part of the Court's consideration of each plaintiff's application below. Iran thus is liable to the Plaintiff. The only outstanding question is his damages.

## II.     Functional Equivalent Family Members

The Plaintiffs seek solatium damages for the loss of their loved ones in the September 11 Attacks. These damages are generally restricted to the immediate family members of victims killed in a terrorist attack. In limited circumstances, however, damages have been awarded to non-immediate family members who are the "functional equivalent" of immediate family.

The Court first defined the framework for determining functional equivalence in a report and recommendation issued on October 14, 2016. ECF No. 3363, adopted at ECF No. 3384. ("Hoglan II.") It refined this framework in "Hoglan IV," issued on August 8, 2017. ECF No. 3676, adopted at ECF No. 3795.[1] The Hoglan IV framework has been the basis for four subsequent decisions on motions for damages based on functional equivalence. ECF Nos. 4175, 5154, 5387 adopted at 5950, 5483 adopted at 5950.

---

[1] Hoglan I involved solatium claims for immediate family members, ECF No. 3358, and Hoglan III concerned non-U.S. nationals.  ECF No. 3374.

2

Solatium awards for family members are similarly well-established. Judge Maas recommended, and Judge Daniels adopted, a framework under which spouses of victims generally receive $12,500,000 in solatium damages, parents and children receive $8,500,000, and siblings receive $4,250,000. ECF Nos. 2618, adopted at 2623. This framework has been the basis for thousands of awards to family members, see, e.g., ECF Nos. 3358 at 9, adopted at 3383, 3666, 4023, 4146, 5062, 5087, 5138, and functional equivalent family members. See, e.g., ECF Nos. 3363 at 16, 4175 at 7, 5154 at 4, 5483 at 21–23. This award has been reduced where a functional equivalent relationship is found but is not fully comparable to a familial relationship. See, e.g., ECF Nos. 3363 at 22 (recommending a stepmother receive half of the normal award where she entered the decedent's life when he was 11), 5387 at 7 (recommending a stepsibling receive half the normal award where he began living with the decedent at 14). The Court therefore evaluates this Motion under the Hoglan IV framework, and the damages framework set out by Judge Maas.

1. **Ian L. Pescaia (<u>Burnett</u>, ECF No. 256)**

Christine Ann Snyder was a certified arborist from Hawaii who had recently visited New York City after attending an American Forestry Conference in Washington, D.C. She was returning to her home in Hawaii as a passenger on United Airlines Flight 93 and was killed along with other passengers and crew after terrorists hijacked Flight 93 and crashed the passenger jet into a field in Somerset County, Pennsylvania. *See* ECF No. 9914-2 at ¶¶ 4-5, 21. At the time of the 9/11 Attacks, Ian Pescaia was Christine's domestic spouse and dependent. Christine and Ian had been living together for approximately seven years as of September 11, 2001, although they had known each other for approximately seventeen years. *Id*. at ¶ 6.

Christine and Ian first met when they were both teenagers attending Kalaheo High School in Kailua, Hawaii. They began dating nine years later in 1993. In 1994, Christine and Ian began

3

living together in Ian's parents' home in Kailua, Hawaii. *Id*. at ¶ 7. Christine and Ian later bought a townhouse together and lived as domestic partners in Kailua, Hawaii, from 1997 until her death on September 11, 2001. Christine and Ian also became engaged in 1997. *Id*. at ¶¶ 8-9. On June 2, 2001, Christine and Ian exchanged wedding vows in Oahu, Hawaii, before a gathering of their closest friends and relatives in a wedding ceremony presided over by the Reverend Janice Schmidt. Reverend Schmidt also issued a Certificate of Marriage to Christine and Ian. *Id*. at ¶ 10.

Although Christine and Ian had exchanged wedding vows on June, 2, 2001, they had not obtained a Marriage License from the State of Hawaii prior to Christine's death. But as further evidence of their marital union, Ian filed IRS Form 1040 (U.S. Individual Income Tax Return) for the 2001 tax year with his filing status listed as "Married Filing Jointly" due to his marriage to Christine in June of 2001. Additionally, in the weeks after the events of 9/11, Ian received a letter with condolences related to Christine's passing from the late Honorable Daniel K. Inouye, U.S. Senator from Hawaii. Senator Inouye noted in the letter that during his visit with Christine in his Washington, D.C., office on September 5, 2001, he observed that "[T]houghts of you were on [Christine's] mind, and I noticed her gently caressing her wedding ring during our meeting." *Id*. at ¶¶ 11-14.

With the assistance of a filing by legal counsel, the Hawaii First Circuit Court appointed Ian as Special Administrator of Christine's estate as her surviving spouse in May of 2002. After his appointment as Special Administrator of Christine's estate, Ian began the process of filing a claim with the September 11th Victim Compensation Fund of 2001 ("VCF") seeking compensation for Christine's wrongful death as her spouse and the personal representative of her estate. However, Charles O. Snyder, Christine's father, successfully petitioned the Hawaii Probate Court to replace Ian as Special Administrator of Christine's estate due to the lack of an executed

4

Marriage License under Hawaii law at the time of Christine's death. In his capacity as the Special Administrator, Christine's father later withdrew Ian's claims that he had filed with the VCF on behalf of Christine's estate. *Id*. at ¶¶ 15-18.

Ian had Christine's cremated remains interred in his family's cemetery plot located in Nuuanu Valley, Honolulu, Hawaii on March 17, 2002, after they were returned to him following the events of 9/11. Traumatized by all of the reminders of Christine's absence, Ian moved out of their Kailua townhouse along with Christine's beloved cat, Horace, within a year of Christine's death. *Id*. at ¶¶ 19-20. Due to his overwhelming and painful memories of the loss of Christine, his wife and the love of his life, Ian later decided to leave Hawaii and move to Utah. Ian has stated that he will never fully recover from the loss of his wife due to the terrorist attacks of 9/11. *Id.* at ¶¶ 21-22.

Based upon their demonstrated and public commitment to a common life together, their formal wedding ceremony, their executed Certificate of Marriage issued by Reverend Janice Schmidt, and other documents confirming Ian's status as Christine's spouse at the time of her death, under these circumstances, Ian L. Pescaia meets the requirements set by this Court to be considered the functional equivalent of a spouse to 9/11 decedent Christine A. Snyder, and the Court awards Mr. Pescaia solatium damages in the amount of $12,500,000.

### III. CONCLUSION

Plaintiff Ian L. Pescaia's Motion for Final Judgment (ECF No. 9912) is GRANTED.  It is:

**ORDERED** that Ian L. Pescaia is awarded solatium damages in the amount of $12,500,000 as the functional equivalent of the husband of 9/11 decedent Christine A. Snyder; and it is

**ORDERED** that prejudgment interest is awarded to be calculated at a rate of 4.96 percent per annum, all interest compounded annually over the same period; and it is

**ORDERED** that similarly situated Plaintiffs who were not previously awarded damages may submit in later stages application for punitive, economic, and/or other damages awards that may be approved on the same basis as currently approved for Plaintiff Pescaia or in prior filings.

Furthermore, the Court respectfully directs the Clerk of the Court to terminate the motion at ECF No. 9912 in 03-MDL-1570 (GBD)(SN) and ECF No. 740 in 15-cv-9903 (GBD)(SN).

Dated: _____
New York, New York

SO ORDERED.

_____
GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE