UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN)<br><br>ECF Case |

**This document relates to:**
  *Burnett, et al. v. Islamic Rep. of Iran, et al.*, No. 15-cv-9903 (GBD)(SN)

### [PROPOSED] MEMORANDUM DECISION AND ORDER ON PLAINTIFFS' MOTION FOR ENTRY OF PARTIAL FINAL DEFAULT JUDGMENTS ON BEHALF OF NON-NATIONAL IMMEDIATE FAMILY MEMBERS (OR THEIR FUNCTIONAL EQUIVALENTS) OF NON-NATIONAL 9/11 DECEDENTS

### (*BURNETT* NON-NATIONALS 4)

GEORGE B. DANIELS, United States District Judge:

Plaintiffs in the case listed above move for default judgments against the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran (the "Iran Defendants"). (ECF No. 9945.[1]) As non-United States nationals, these Plaintiffs cannot bring claims against Iran under 28 U.S.C. § 1605A(c) (*see* ECF No. 9666, at 1) and therefore ask this Court to hold Iran liable under state tort law.

### I. PROCEDURAL HISTORY

This Court assumes familiarity with this multidistrict litigation and summarizes only the procedural history relevant to the instant motion. Plaintiffs filed their complaint alleging Iran's liability for wrongful death, survival, and intentional infliction of emotional distress. (*See* No. 15-cv-9903, ECF No. 53, at 1084 (alleging intentional infliction of emotional distress), 1086-88 (wrongful death and survival causes of action).) After being properly served with Plaintiffs'

---

[1] Unless otherwise stated, all ECF citations included herein refer to documents filed on the 9/11 multidistrict litigation docket. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570 (GBD)(SN).

complaints, the Iran Defendants failed to respond or enter an appearance, and the Clerk of Court filed a certificate of default. (*See* No, 15-cv-9903, ECF No. 67). Plaintiffs then filed the instant motion for default judgment.

## II. PLAINTIFFS' MOTION IS GRANTED

A court may enter a default judgment against a foreign sovereign if it has jurisdiction and if the "claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). This Court previously ruled in this MDL that it has subject matter and personal jurisdiction when Plaintiffs assert state law claims against Iran and properly effectuate service. (*See* ECF No. 9666, at 2-5; *see also* 28 U.S.C. §§ 1330, 1605B(b), 1608(a).) All that remains is for the Court to address Iran's liability and the appropriate damages.

### A.     Choice of law

"Iran is subject to suit for state tort claims." (ECF No. 9666, at 5.) Analyzing its liability for state torts requires the Court to first conduct a choice-of-law analysis. Multidistrict litigation courts apply the choice-of-law rules "that would have been applied by a state court in the jurisdiction in which a case was filed." *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993).

Since this action was filed in New York, New York's choice-of-law rules govern. Distilled down, those rules essentially prescribe "an evaluation of the 'place of the tort'—*i.e.*, 'the jurisdiction where the 'last event necessary' to make the defendant liable occurred.'" (ECF No. 9666, at 7 (internal citation omitted) (quoting *In re Sept. 11th Litig.*, 494 F. Supp.2d 232, 239 (S.D.N.Y. 2007)).) For these Plaintiffs, the immediate family members of people killed at the World Trade Center and the Pentagon, the relevant events occurred in New York City and Arlington, Virginia, respectively. This Court therefore analyzes the intentional infliction of emotional distress claims under New York law and Virginia law.

2

**B.      Intentional Infliction of Emotional Distress Under New York Law**

The tort of intentional infliction of emotional distress ("IIED") "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993). Liability for intentional infliction of emotional distress extends to those who aid and abet the primary tortfeasor. *See Rich v. Fox News Network, LLC*, No. 18 Civ. 2223 (GBD), 2020 WL 5768430, at *5-*6 (S.D.N.Y. Sept. 25, 2020) (analyzing claim for aiding and abetting IIED).

Plaintiffs, whose family members were killed in the 9/11 Attacks, have established Iran's liability for aiding and abetting IIED. Iran aided and abetted al Qaeda by knowingly providing substantial assistance in plotting the 9/11 Attacks. (*See* ECF No. 9666, at 8 (applying the analysis to the facts alleged in the Amended Complaint in this action)).) And by carrying out the 9/11 Attacks, al Qaeda committed IIED. In satisfaction of the first two elements, the 9/11 Attacks, as "[a]cts of terrorism[,] [were] by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Flanagan v. Islamic Republic of Iran*, 87 F. Supp.3d 93, 115 (D.D.C. 2015). In satisfaction of the final two elements, the 9/11 Attacks killed the Plaintiffs' family members, thereby inflicting extreme emotional distress.

This Court GRANTS Plaintiffs' request for compensatory damages for IIED under New York law where the 9/11 victim was killed in New York. *See Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 146-47 (2d Cir. 2014) (approving compensatory damages for IIED claim). This Court awards damages to immediate family members of 9/11 victims according to the established framework developed for solatium claims. (*See* ECF No. 2623.) As IIED claims are "nearly indistinguishable from" solatium claims, this Court awards damages here pursuant to the same

framework, as set forth in Exhibit A. *Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348, 257 (D.C. Cir. 2018) (quoting *Flanagan*, 87 F. Supp.3d at 115).

### C.    Intentional Infliction of Emotional Distress Under Virginia Law

Similar to New York law, the tort of IIED under Virginia law includes the following elements: "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe." *Harris v. Kreutzer*, 271 Va. 188, 203 (2006) (citing *Womack v. Eldridge*, 215 Va. 338, 342 (1974) (adopting the view that "a cause of action will lie for emotional distress, unaccompanied by physical injury" a relying on *Restatement (Second) of Torts* § 46)). The Virginia Supreme Court has also held that "a plaintiff can allege joint liability of parties who acted in concert to commit the tort of intentional infliction of emotional distress…." *Almy v. Grisham*, 273 Va. 68, 81 (2007). The Plaintiffs whose loved one was killed in or around the Pentagon in Arlington, Virginia have established Iran's liability for intentional infliction of emotional distress in the same manner as set forth above under New York law.

This Court GRANTS Plaintiffs' request for compensatory damages for IIED under Virginia law where the 9/11 victim was killed in Virginia. *See Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 146-47 (2d Cir. 2014) (approving compensatory damages for IIED claim). This Court awards damages to immediate family members of 9/11 victims according to the established framework developed for solatium claims. (*See* ECF No. 2623.) As IIED claims are "nearly indistinguishable from" solatium claims, this Court awards damages here pursuant to the same framework, as set forth in Exhibit A. *Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348, 257 (D.C. Cir. 2018) (quoting *Flanagan*, 87 F. Supp.3d at 115).

### D. Functional Equivalent Determinations for Two Plaintiffs

The Plaintiffs on Exhibit B, Solomon Gayle and Erica Zimmerman, seek damages for intentional infliction of emotional distress on grounds that their close relationship with people killed in the September 11, 2001 terrorist attacks merits a finding that they are functionally family members of the victims ("functional equivalents").  "In limited circumstances … damages have been awarded to non-immediate family members who are the 'functional equivalent' of immediate family." (*See* ECF No. 8293 at 2 (citing ECF No. 8268 at 2).)   On October 14, 2016, with refinements on August 8, 2017, this Court established a framework for determining if a Plaintiff is a functional equivalent of immediate family. (*See* ECF No. 3384; ECF No. 3795.) The Court has adopted a framework for addressing solatium damages for immediate family members that has been applied equally to functional equivalent family members or has been reduced where a functional equivalent relationship is found but is not fully comparable to a familial relationship. (*See, e.g.,* ECF No. 2623 (establishing the solatium-damages framework); ECF No. 3363 (adopted by ECF No. 3384).)   The Court therefore evaluates these functional-equivalence determinations under the prior framework established by this Court.

### 1. Solomon Gayle (*Burnett*, ECF No. 53 (Amended Complaint) at para. 400)

Solomon Gayle is the fiancé of Seilai Khoo. (*See* ECF No. 9947-3 at ¶ 2.)  They met as Computer Science majors in 1983 at Columbia University with Ms. Khoo being from Malaysia (and educated in Singapore) and Mr. Gayle being from Jamaica. *Id.* at ¶¶ 2-4.  They became a couple soon thereafter and were together for 17 years before Ms. Khoo was killed while working for Fred Alger Management on the 93rd Floor of One World Trade Center. *Id.* at ¶¶ 2, 5. After waiting for Ms. Khoo to pass all three aspects of the Certified Financial Analyst certification process, the couple began cohabitating in an apartment in Jersey City, New Jersey. *Id.* at ¶¶ 13-14.

Through their 17-year relationship, they traveled together extensively, and Ms. Khoo wrote love notes to Mr. Gayle that keeps to this day. *Id.* at ¶¶ 11-12, 16, 28-29. In the last years of Ms. Khoo's life, she supported Mr. Gayle in his efforts to create and build an internet start-up company, Webternity.com, and while this business was in development, Ms. Khoo provided Mr. Gayle with almost exclusive emotional and financial support. *Id.* at ¶¶ 21-23. Mr. Gayle purchased an engagement ring for Ms. Khoo in 1996 to cement who he claims they already knew about the commitment in their relationship. *Id.* at ¶ 18. They would often speak of getting married at the courthouse or on one of their international vacations, but they had plans to move back to New York City from Jersey City, and they wanted their marriage to coincide with that move. *Id.* at ¶¶ 15-17.

The Court finds that Mr. Gayle should receive the full damages award for married partners of September 11 victims. The 17-year length of the relationship between Mr. Gayle and Ms. Khoo, the fact that they cohabitated in the Jersey City apartment from 1992 until 2001, the statements about them being formally engaged, and Mr. Gayle's admitted financial dependence on Ms. Khoo in the years leading up to her death—notwithstanding the lack of commingling of finances—supports this finding that Mr. Gayle is entitled to an award of $12,500,000 as the functional equivalent of Ms. Khoo's husband.

    2.  **Erica Zimmerman-Basnicki (*Burnett*, ECF No. 717)**

Erica Zimmerman a/k/a Erica Zimmerman-Basnicki is the stepchild of Kenneth William Basnicki, who married Ms. Zimmerman's mother when she was approximately four years old. (*See* ECF No. 9947-4 at ¶ 4.) Ms. Zimmerman's biological father was virtually absent from her life growing up, and he did not provide any financial or fatherly support to Ms. Zimmerman or her mother. *Id.* at ¶¶ 10-11. Mr. Basnicki included Ms. Zimmerman as his "child" in his Last Will &

Testament, claimed her as a dependent on his taxes, and sought to adopt her when he married Ms. Zimmerman's mother only to learn that Ms. Zimmerman's biological father was required to consent to the adoption which he would not do.  *Id.* at ¶¶ 6, 8-9.  Mr. Basnicki was Ms. Zimmerman's "father in every sense of the word" providing her with "emotional, moral and spiritual guidance … until the day he died."  *Id.* at ¶ 5.  The relationship with Mr. Basnicki as a father began when they began to cohabitate when Ms. Zimmerman was four years old and "continued to be so after [she] out of [their] family home to attend college up until the days he was killed on September 11, 2001."  *Id.* at ¶ 12.  Ms. Zimmerman states that she is the woman she is today because Kenneth Basnicki was her father.  *Id.* at ¶ 13.

The Court finds that Ms. Zimmerman should receive the full damages award for children of September 11 victims.  She cohabitated with Mr. Basnicki from the four years old until she left for college, her relationship with her biological father was close and she views him as a formative force in her development and providing her advice and guidance that remains with her to this day. It is clear that the relationship was close, and the sole reason stated for why Ms. Zimmerman was not adopted by Mr. Basnicki was the interference provided by Ms. Zimmerman's biological father. The facts support the Court's determination that Ms. Zimmerman is entitled to an award of $8,500,000 as the functional equivalent of Mr. Basnicki's daughter.

### III.  CONCLUSION

Upon consideration of the evidence and arguments submitted by Plaintiffs through their Motion for Entry of Partial Final Default Judgments on Behalf of Non-National Immediate Family Members (or Their Functional Equivalents) of Non-National 9/11 Decedents, together with the entire record in this case, it is hereby:

**ORDERED** that service of process was effected upon the Islamic Republic of Iran in each of these cases in accordance with 28 U.S.C. § 1608(a)(4); and it is

**ORDERED** that service of process was effected upon the Islamic Revolutionary Guard Corps in the *Burnett* case in accordance with 28 U.S.C. § 1608(a)(4); and it is

**ORDERED** that service of process was effected upon the Central Bank of the Islamic Republic of Iran in the *Burnett* case in accordance with 28 U.S.C. § 1608(b)(3)(B); and it is

**ORDERED** that this Court possesses subject-matter jurisdiction over these foreign-sovereign defendants under 28 U.S.C. § 1605B(b) as it pertains to those family members whose loved one who was killed in the terrorist attacks on September 11, 2001 was not a United States national on September 11, 2001 and neither was the family member; and it is

**ORDERED** that this Court has personal jurisdiction over the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran (the "Iran Defendants") based on the existence of subject-matter jurisdiction under 28 U.S.C. § 1605B(b) and proper service of process on these defendants under 28 U.S.C. § 1608; and it is

**ORDERED** that default judgment as to liability pursuant to the exception to foreign sovereign immunity codified at 28 U.S.C. § 1605B(b) and the common law of New York, Pennsylvania, and Virginia is entered against the Iran Defendants for claims by Plaintiffs who are non-national immediate family members (or their functional equivalents) of non-national 9/11 decedents; and it is

**ORDERED** that default judgment as to liability pursuant to the exception to foreign sovereign immunity codified at 28 U.S.C. § 1605B(b) and the common law of New York and Virginia is entered against the Iran Defendants for claims by Plaintiffs on Exhibit A who are immediate family members (spouses, children, parents, and siblings and including personal

representatives of the estates of immediate family members who passed away between September 11, 2001 and now) of individuals who were killed in the terrorist attacks on September 11, 2001 where neither the 9/11 decedent nor their immediate family member was a United States national on September 11, 2001; and it is

**ORDERED** that default judgment as to liability pursuant to the exception to foreign sovereign immunity codified at 28 U.S.C. § 1605B(b) and the common law of New York is entered against the Iran Defendants for claims by Plaintiffs on Exhibit B who assert claims as the "functional equivalents" of an immediate family member (spouse, child, parent, or sibling) of an individual who was killed in the terrorist attacks on September 11, 2001 where neither the 9/11 decedent nor the functional equivalent of an immediate family member was a United States national on September 11, 2001; and it is

**ORDERED** that because the exception to foreign sovereign immunity codified at 28 U.S.C. § 1605B(b) applies in this case to the Iran Defendants, that plaintiffs who rely on this exception may have their claims against the Iran Defendants adjudicated pursuant to 28 U.S.C. § 1606 as a "pass through" such that the Iran Defendants shall be liable in the same manner and to the same extent as a private individual under like circumstances; and it is

**ORDERED** that New York choice-of-law principles apply to any common-law claims available to the plaintiffs; and it is

**ORDERED** that under the circumstances of the terrorist attacks on September 11, 2001, the applicable state law to be applied in each instance is the law of the state where the harm took place—New York for the attacks in and around the World Trade Center; Virginia for the attack on the Pentagon; and Pennsylvania for deaths arising from the crash of United Flight 93; and it is

**ORDERED** that New York law and Virginia law permit damages for intentional infliction of emotional distress; and it is

**ORDERED** that partial final judgment is entered against the Iran Defendants on behalf of the Plaintiffs in *Burnett, et al. v. Islamic Republic of Iran, et al.*, No. 15-cv-9903 (GBD)(SN), who are included on Exhibits A and B; and it is

**ORDERED** that the Plaintiffs identified on Exhibits A and B are awarded damages for intentional infliction of emotional distress of $12,500,000 per spouse (or functional equivalent); $8,500,000 per parent; $8,500,000 per child (or functional equivalent); and $4,250,000 per sibling, as set forth on Exhibits A and B; and it is

**ORDERED** that Plaintiffs identified in Exhibits A and B may submit applications for punitive damages or other damages (to the extent such awards have not previously been ordered) at a later date consistent with any future rulings made by this Court on this issue; and it is

**ORDERED** that the remaining *Burnett* Plaintiffs similarly situated to the Plaintiffs on Exhibits A and B may submit in later stages applications for damages awards to the extent such awards have not previously been ordered.

Furthermore, the Court respectfully directs the Clerk of the Court to terminate the motion at ECF No. 9945 in 03-MDL-1570 (GBD)(SN) and ECF No. 746 in 15-cv-9903 (GBD)(SN).

Dated: New York, New York                           **SO ORDERED:**

_____, 2024

_____
GEORGE B. DANIELS
United States District Judge