```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

     TERRORIST ATTACKS ON                              03-MD-01570 (GBD)(SN)
     SEPTEMBER 11, 2001
                                                       REPORT &
                                                       RECOMMENDATION

-----------------------------------------------------------------X
```

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

> Burnett, et al., v. Islamic Republic of Iran, No. 15-cv-9903
> Jimenez, et al. v. Islamic Republic of Iran, No. 18-cv-11875

Four plaintiffs in two cases move for default judgments against the Islamic Republic of Iran.[1] ECF Nos. 9825, 9912.[2] They ask the Court to find that they are the "functional equivalents" of immediate family members of people killed in the September 11, 2001 terrorist attacks and are thus entitled to solatium damages. ECF No. 3363 at 12–16. The Court recommends granting their motions as described below.

## DISCUSSION

The Court assumes familiarity with this multidistrict litigation and addresses only the relevant procedural and factual issues. The Court granted default judgment as to liability for the plaintiffs in Burnett, et al., v. Islamic Republic of Iran, No. 15-cv-9903, against Iran on January

---

[1] Ian L. Pescaia, a Burnett plaintiff, moves for default judgment against the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran (collectively, "the Iran Defendants"). When this Report and Recommendation refers to the Islamic Republic of Iran or "Iran" in relation to Mr. Pescaia's motion, it does so interchangeably with the collective "Iran Defendants."

[2] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

31, 2017, see ECF No. 3443, and in Jimenez, et al. v. Islamic Republic of Iran, No. 18-cv-11875, against Iran on September 3, 2019. See ECF No. 5056. The only outstanding question is whether Jaimenys, Jaimercedes, and Jaimelin Taveras, and Ian L. Pescaia (collectively, the "Plaintiffs"), are entitled to damages under the Court's "functional equivalent" framework. The Plaintiffs seek (1) findings that their relationships with 9/11 decedents Manuel De Jesus Molina and Christine A. Snyder, respectively, were functionally equivalent to those of biological children and a spouse; (2) solatium damages consistent with those granted to biological children and spouses of people killed in the 9/11 Attacks; (3) prejudgment interest; and (4) leave to seek punitive or other damages later. See ECF Nos. 9825, 9912.

I. **Functionally Equivalent Family Members**

The Court consistently awards solatium damages to those who lost loved ones in the 9/11 Attacks. See, e.g., ECF No. 2618, adopted at 2623. These damages are generally restricted to spouses, parents, children, and siblings but in limited circumstances are extended to people who are functionally equivalent to immediate family.

To determine whether a plaintiff's relationship is functionally equivalent to that of an immediate family member, the Court uses the Hoglan IV framework. See ECF Nos. 3363, adopted at 3384 (Hoglan II, setting out functional equivalence standards); 3676, adopted at 3795 (Hoglan IV, refining functional equivalence framework). That framework requires a fact-intensive, plaintiff-by-plaintiff analysis. The Court weighs how long the plaintiff and decedent lived together; their degree of emotional, financial, and social connection; and factors particular to certain relationships, such as how long a couple was together, whether they were engaged to be married, the age of a child when a relationship formed, or the continued involvement of a biological parent in a child's life. See ECF Nos. 3363 at 10–12, 14–16; 3676 at 7–8, 11, 13–14.

After the Court finds a functionally equivalent relationship, it must determine the appropriate amount of damages. In most cases, it awards the same amount of solatium damages awarded to immediate family members. Plaintiffs who are functionally equivalent to spouses receive $12,500,000; those functionally equivalent to parents and children receive $8,500,000; and functionally equivalent siblings receive $4,250,000. See ECF No. 2618, adopted at 2623 (establishing solatium damages amounts for immediate family); ECF Nos. 3363 at 16 (applying those amounts to functionally equivalent family members); 4175 at 7 (same); 5483 at 21–23 (same). In some cases, however, the Court awards reduced damages to plaintiffs whose relationships are functionally equivalent but not fully comparable to those of immediate family. See, e.g., ECF Nos. 3363 at 22 (recommending a stepmother receive half the normal award because she entered the decedent's life when he was 11 years old); 5387 at 7 (recommending a stepsibling receive half the normal award because he began living with the decedent at age 14).

As it has done many times before, the Court applies the Hoglan IV framework to the Plaintiffs and their evidence below. See, e.g., ECF Nos. 4175 (applying Hoglan IV); 5387, adopted at 5950 (same); 8264 (same).

1. **Jaimenys, Jaimelin, and Jaimercedes Taveras**

When Manuel De Jesus Molina began dating Mercedes Molina in 1992, he entered the lives of her two daughters, Jaimenys and Jaimelin Taveras. ECF Nos. 9827-3 at ¶ 2, 9827-4 at ¶ 2. Jaimenys was nine years old at the time; Jaimelin was one. Id. Jaimercedes Taveras was born approximately one year later.[3] ECF No. 9827-5 at ¶ 7.

By 1995, Mr. and Ms. Molina lived with Jaimenys, Jaimelin, and Jaimercedes in a three-bedroom apartment in the Bronx. ECF Nos. 9827-2 at ¶ 2, 9827-3 at ¶ 2, 9827-4 at ¶ 2. They

---

[3] Because Jaimenys, Jaimelin, and Jaimercedes Taveras share a last name, the Court refers to them by their first names for clarity.

would all live there together until Mr. Molina's death on September 11, 2001. Id. A "true family man," Mr. Molina cared for Jaimenys, Jaimelin, and Jaimercedes. ECF No. 9827-4 at ¶ 3. He helped them with their homework, cooked their meals, attended their school events and medical appointments, taught them dominoes, bought them presents, and shared with them his passion for Bachata music. ECF Nos. 9827-2 at ¶¶ 3–7, 9827-3 at ¶¶ 3–6, 9827-4 at ¶¶ 3–5. He took them to visit his mother's and sister's apartments in Manhattan almost every weekend, and traveled with them to his hometown in the Dominican Republic most summers. Id. He also supported the family financially. ECF Nos. 9827-2 at ¶ 3, 9827-3 at ¶ 3, 9827-4 at ¶ 3.

By contrast, Jaimenys, Jaimelin, and Jaimercedes have had no, or very little, relationship with Ms. Molina's ex-husband—Jaimenys' and Jaimelin's biological father and the man Jaimercedes refers to as "the person listed on my birth certificate as my father." ECF Nos. 9827-2 at ¶ 11, 9827-3 at ¶ 9, 9827-4 at ¶ 6. (Ms. Molina believes that Mr. Molina is Jaimercedes' biological father. ECF No. 9827-5 at ¶ 7. For Jaimercedes, Mr. Molina has always been "my Papa." ECF No. 9827-2 at ¶ 2.)

Given Mr. Molina's longstanding emotional, financial, and social support for Jaimenys, Jaimelin, and Jaimercedes, their six-year cohabitation, and the absence of Ms. Molina's ex-husband from the family's life, the Court recommends that the three daughters be deemed the functional equivalents of Mr. Molina's biological children. However, under Hoglan IV, a stepchild may only receive full solatium damages if they were younger than nine when the decedent joined their family. ECF No. 3676 at 13. From age nine on, the award is reduced to half the total solatium amount. Id. Because Mr. Molina's relationship with Jaimenys began when she was nine and the family moved in together when Jaimenys was 12, see ECF No. 9827-4 at ¶ 2, the Court recommends that only Jaimelin and Jaimercedes be granted the full solatium award

4

given to biological children of September 11 victims, $8,500,000, while Jaimenys be granted $4,250,000.

   2.   **Ian L. Pescaia**

Ian L. Pescaia and Christine Ann Snyder met as teenagers at Kalaheo High School in Kailua, Hawaii. ECF No. 9914-2 at ¶ 7. Nine years after they first met, in 1993, they started dating. Id. They moved into Mr. Pescaia's parents' home the following year, then into their own townhouse in 1997. Id. at ¶ 7, 8. That same year, they got engaged. Id. at ¶ 9. Then, on June 2, 2001, in a "beautiful and serene setting" in Oahu, Hawaii, the pair pledged their "love and devotion to one another in a wedding ceremony which was presided over by the Reverend Janice Schmidt." Id. at ¶ 10. Reverend Schmidt issued them a Certificate of Marriage, but the couple never obtained a Marriage License from the State of Hawaii. Id. at 11.

 Mr. Pescaia and Ms. Snyder would only have three months together after their wedding. Ms. Snyder, a certified arborist, traveled to Washington, D.C. to attend an American Forestry Conference and spent a few days after the conference visiting New York City. Id. at ¶ 5. To return home, she boarded United Airlines Flight 93. Id. at ¶ 4. When that plane was hijacked and crashed into a field in Pennsylvania, killing her and everyone on board, the couple's "idyllic life . . . was taken from [them]." Id. at ¶ 21.

Though Mr. Pescaia and Ms. Snyder were not legally married, their formal engagement, wedding ceremony, investment in a common life and shared home together, the length of their relationship, and the duration of their cohabitation collectively evince "a true union in every sense of the word." Id. at ¶ 12. The Court recommends that Mr. Pescaia be deemed the functional equivalent of Ms. Snyder's spouse and awarded $12,500,000 in solatium damages.

## CONCLUSION

The Court recommends GRANTING the motions as described above, awarding Jaimelin and Jaimercedes Taveras $8,500,000, Jaimenys Taveras $4,250,000, and Ian L. Pescaia $12,500,000 in solatium damages.

The Court further recommends that Plaintiffs be awarded prejudgment interest on these damages from September 11, 2001, to the date of judgment, at a rate of 4.96 percent per annum, compounded annually. ECF No. 3358, adopted at ECF No. 3383.

Plaintiffs may apply for punitive, economic, and other damages at a later date and in a manner consistent with any applicable future Court rulings on the issue. Additionally, any plaintiffs in these two cases not appearing in these motions who were not previously awarded damages may still submit applications for damages awards in later stages.

SARAH NETBURN
United States Magistrate Judge

DATED:   November 4, 2024
         New York, New York

\*       \*       \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have 14 days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); see Fed. R. Civ. P. 6(a), 6(d). These objections shall be filed with the Court and served on any opposing parties. See Fed.

6

R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable George B. Daniels if required by that judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to Judge Daniels. <u>See</u> Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. James</u>, 712 F.3d 79, 105 (2d Cir. 2013).