UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

    TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001

-----------------------------------------------------------------X

03-MD-01570 (GBD)(SN)

**REPORT &
RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

    Burnett v. Islamic Republic of Iran, No. 15-cv-09903 (GBD)(SN)

Two Burnett Plaintiffs seek partial final default judgments for personal injuries sustained in the 9/11 Attacks. See ECF Nos. 10362 (Burnett X), 10772 (Burnett XI).[1] The Court recommends granting their motions.

## BACKGROUND

The Court assumes familiarity with this multidistrict litigation and summarizes only the relevant procedural and factual background. The Court first set out its framework for personal injury damages in Burnett I. See ECF No. 5879. The framework divides injuries into three categories with corresponding damages: a baseline award ($7,000,000) for "severe" injuries, a downward departure ($5,000,000) for "significant" injuries, and an upward departure ($10,000,000) for "devastating" injuries. Id. at 6–10. For rare individuals with exceptionally traumatic injuries, the Court has recommended damages above $10 million. See, e.g., ECF No. 5909 at 11–13 (awarding damages of $25,000,000 to a plaintiff whose injuries were "beyond

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

devastating"). Because Burnett I relied upon a private right of action that is reserved for United States nationals, military personnel, and government employees, it also limited recovery to claims by members of those groups. 28 U.S.C. § 1605A(c). Numerous United States nationals have since recovered pain and suffering awards for their personal injuries on this basis. See, e.g., Burnett II, ECF No. 5888; Burnett III, ECF No. 5909; Ashton I, ECF No. 5914; Burnett IV, ECF No. 5932; Burnett V, ECF No. 7323.

The moving Plaintiffs are both United States nationals seeking pain and suffering damages for their personal injuries pursuant to § 1605A. The Court must therefore resolve (1) whether it has jurisdiction over their claims; (2) whether Defendants the Islamic Republic of Iran ("Iran"), the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran (collectively, the "Iran Defendants") have defaulted; (3) whether the Iran Defendants are liable; and (4) if so, what damages are due.

## DISCUSSION

### I.    The Court Has Jurisdiction Under the FSIA

The Foreign Sovereign Immunities Act ("FSIA") "supplies the ground rules for 'obtaining jurisdiction over a foreign state in the courts of this country.'" Federal Republic of Germany v. Philipp, 592 U.S. 169, 175 (2021) (quoting Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 443 (1989)). As its name suggests, the FSIA makes foreign states immune from suit by default, conferring jurisdiction over actions only if they meet strict requirements. The Plaintiffs' suits clear these hurdles, so the Court has jurisdiction over their claims.

A. **Subject Matter Jurisdiction**

Under the FSIA, district courts have subject matter jurisdiction over nonjury civil actions brought *in personam* against foreign states if "one of several enumerated exceptions to immunity applies." Republic of Sudan v. Harrison, 587 U.S. 1, 4 (2019); see 28 U.S.C. §§ 1330(a), 1604.

The Burnett X and Burnett XI Plaintiffs bring their claims under the exception codified at 28 U.S.C. § 1605A because they are United States nationals. See ECF Nos. 10362 (Burnett X), 10773 (Burnett XI). In Burnett I, the Court found that it possessed subject matter jurisdiction under § 1605A because the statute allows U.S. nationals to hold a foreign state accountable for "acts of terrorism or the provision of material support or resources for acts of terrorism" when those acts are undertaken "by an official, employee, or agent of the foreign state while acting within the scope of his or her office, employment, or agency." ECF No. 5879 at 2 (citing 28 U.S.C. § 1605A(a)(1)). The Court found that § 1605A applied to the Iran Defendants in the personal injury context because the Burnett Plaintiffs' injuries "occurred either as a direct result of the 9/11 attacks, the ensuing chaos from the attacks in the immediate aftermath, or as a result of first responders attempting to assist the injured or endangered fleeing from the scene." Id. at 3. The same is true of the Burnett X and Burnett XI Plaintiffs' injuries.

Damages are available under § 1605A "for personal injury or death" and include "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c)(4). The Burnett X and Burnett XI Plaintiffs seek pain and suffering damages for their personal injuries sustained during the 9/11 Attacks. Accordingly, the Court has subject matter jurisdiction over their claims under § 1605A.

B. **Personal Jurisdiction**

With subject matter jurisdiction established, personal jurisdiction is simply a matter of showing "valid service of process." Mobil Cerro Negro, Ltd. v. Bolivarian Republic of

Venezuela, 863 F.3d 96, 104 (2d Cir. 2017) (cleaned up); accord 28 U.S.C. § 1330(b). Service on the Iran Defendants is also governed by the FSIA.

The FSIA specifies four methods of serving foreign states or their political subdivisions in descending order of preference. See 28 U.S.C. § 1608(a). The first, service by "special arrangement," was impossible because the Burnett Plaintiffs have no such arrangement with Iran or its political subdivision the Islamic Revolutionary Guard Corps. Id. § 1608(a)(1); accord ECF No. 10665 at 6–7. The second, service according to an "international convention on service of judicial documents," was unavailable because there is no service convention between the U.S. and Iran. 28 U.S.C. § 1608(a)(2). The third, service by registered "mail," proved ineffective; the Clerk of Court mailed the requisite documents, but Iran and the Islamic Revolutionary Guard Corps failed to acknowledge receipt. 28 U.S.C. § 1608(a)(3); see No. 15-cv-09903, ECF No. 55. The fourth, service via "diplomatic channels," finally succeeded. 28 U.S.C. § 1608(a)(4); Aff. of Service, No. 15-cv-09903, ECF No. 64.

For agencies or instrumentalities of foreign states, the FSIA sets out a separate list of three potential methods of service, also in descending order of preference. See 28 U.S.C. § 1608(b). The first is again service by "special arrangement." 28 U.S.C. § 1608(b)(1). Service was impossible under this method because the Burnett Plaintiffs have no such arrangement with the Central Bank of the Islamic Republic of Iran. See ECF No. 10665 at 7 (citing Pls.' Mem. of Law at 7, ECF No. 9734). The second method, which allows for service to be delivered "to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States," or according to an "international convention on service of judicial documents," did not apply. 28 U.S.C. § 1608(b)(2). So, as permitted by the

4

third method, the Burnett Plaintiffs attempted service by registered "mail," which succeeded. 28 U.S.C. § 1608(b)(3)(B); see Aff. of Service, No. 15-cv-09903, ECF No. 64.

Because the Plaintiffs properly effectuated service under 28 U.S.C. § 1608(a)(4) and 28 U.S.C. § 1608(b)(3) on claims within the Court's subject matter jurisdiction, the Court has personal jurisdiction over the Iran Defendants.

## II. The Iran Defendants Defaulted

After the Plaintiffs effectuated service, the Iran Defendants had "sixty days" to "serve an answer or other responsive pleading." 28 U.S.C. § 1608(d). The Iran Defendants did not respond or otherwise appear in that time or since. The Clerk of Court entered a Certificate of Default against the Iran Defendants on December 5, 2016. See Clerk's Certificate of Default, No. 15-cv-09903, ECF No. 67.

## III. The Iran Defendants Are Liable

On January 31, 2017, the Honorable George B. Daniels granted the Plaintiffs in Burnett an Order of Judgment by default against the Iran Defendants. Order, No. 15-cv-09903, ECF No. 85; ECF No. 3443. That decision arose under 28 U.S.C. § 1605A(c), meaning it applied to United States nationals like the moving Plaintiffs. The Iran Defendants thus remain liable to the Burnett X and Burnett XI Plaintiffs.

## IV. The Burnett X and Burnett XI Plaintiffs Are Entitled to Damages

The only remaining question is damages. The moving Plaintiffs seek compensatory damages for the pain and suffering traceable to the personal injuries they sustained in the 9/11 Attacks. ECF Nos. 10362, 10772. The Court's familiar Burnett I framework categorizes these injuries into three groups with corresponding awards: a baseline award ($7,000,000) for "severe" injuries, a downward departure ($5,000,000) for "significant" injuries, and an upward departure ($10,000,000) for "devastating" injuries. ECF No. 5879 at 6–10. For rare individuals with

exceptionally traumatic injuries, the Court has recommended damages above $10 million. See, e.g., ECF No. 5909 at 11–13 (awarding damages of $25,000,000 to a plaintiff whose injuries were "beyond devastating"). Conversely, "[t]he absence of medical records supporting and providing further information regarding an affiant's claims may support a downward departure in an award determination." ECF No. 5879 at 9.

The Court analyzes each of the Plaintiffs' claims for pain and suffering individually based on this framework.

### A. <u>Burnett X</u>, ECF No. 10362

### Manuel Gonzalez

Manuel Gonzalez was working as a firefighter with Ladder 41 of the Fire Department of New York (FDNY) on September 11, 2001, when two passenger jets struck the North and South Towers of the World Trade Center ("WTC"). ECF No. 10364-2 ¶ 3. Like so many first responders, Mr. Gonzalez rushed to the site that would soon be known as Ground Zero. Id. ¶ 4. When he arrived, he encountered what "looked like a war zone." Id. The South Tower, he reports, had collapsed, and the North Tower "continued to burn." Id.

He was assigned to assist with search and rescue efforts in and around WTC Building 5. Id. ¶ 5. Carrying a thermal imaging camera, he and his fellow firefighters looked for victims trapped inside the building and in the surrounding area. Id. At one point, they deployed a firetruck and ladder to attempt to rescue people trapped on Building 5's rooftop. Id.

During these rescue efforts, Mr. Gonzalez fell "several times and injured [his] right knee." Id. ¶ 6. He inhaled "large quantities of building dust and debris." Id. Yet he kept fighting until 10:30 p.m. that night. Id. He finally left to seek medical treatment at the Jacobi Medical Center in the Bronx, where staff treated his right knee injury and inhalation injuries. Id. ¶ 7.

His medical records confirm his injuries, including a pulmonary injury, a chronic respiratory disorder, chronic rhinosinusitis, asthma, and a right knee injury. Id. Ex. C. Mr. Gonzalez also reports a diagnosis for post-traumatic stress disorder ("PTSD"). Id. ¶ 8. He has received ongoing treatment for these injuries in the years that have followed the 9/11 Attacks. Id. ¶ 7. These are significant injuries, and the Court therefore recommends a $5 million award.

B. Burnett XI, ECF No. 10772

**Dalisay Olaes**

On September 11, 2001, Dalisay Olaes was working in the Pentagon as a Personnel Management Specialist with the Army. ECF No. 10774-2 ¶ 5, 6. She was "on her way to make her coffee" when American Airlines Flight 77 plunged into the building. Id. ¶ 7. She "felt a tremor like an earthquake" and was overcome with "total shock." Id. The smell of "burning jet fuel" filled the air, and she "saw what she describe[d] as a 'ball of fire' coming towards her." Id. "She crouched in her cubicle and began to scream for help." Id. As smoke "engulfed" her and she struggled to breathe, she looked for a way out. Id.

A coworker found her and they "frantically searched for a safe exit." Id. ¶ 8. They could not spot one—"every window was surrounded by flames or smoke." Id. Mrs. Olaes finally located a window that was not consumed by the fire. Id. She jumped. Id. She fell 20 feet "onto a concrete driveway" and fractured her right femur, resulting in an "open" wound. Id. She also injured her knees and lower back. Id. When a medical worker found her, they told her that she "needed to be taken to a hospital immediately." Id. ¶ 9. At the Arlington Hospital ICU, Mrs. Olaes was treated for her "traumatic leg, knee, back, and inhalation injuries," Id. ¶ 9, and underwent emergency surgery on her femur and left knee, Id. at 20–27. She would continue to seek treatment for these injuries for years. Id. ¶ 10.

7

Dalisay Olaes died on July 1, 2019. Id. ¶ 4. Her spouse, Renato Olaes, brings this claim as the personal representative of her estate. Id. ¶ 1. At the time of the 9/11 Attacks, the couple had been married for 32 years. Id. ¶ 3. The preceding narrative comes from Renato Olaes's sworn declaration, which he reports is based on his daily conversations with Mrs. Olaes in the years that followed the 9/11 Attacks. Id. ¶ 4. He has also submitted documents and records corroborating his declaration. Id. Ex. A–C.

His declaration describes Mrs. Olaes's multiple injuries, which included: a fractured right femur that required surgery to repair; bilateral knee injuries that required surgery to repair; a back injury that required surgery to repair; allergic rhinitis; a chronic cough; asthma; gastroesophageal reflux disease ("GERD"); and reactive airway disease ("RADS"). Id. ¶ 11. Mrs. Olaes's medical records confirm these injuries. Id. Ex. C. Since Mrs. Olaes suffered "severe orthopedic trauma requiring significant or multiple surgeries," the Court finds that her injuries are "severe." ECF No. 5879 at 7. Accordingly, the Court recommends a $7 million award.

## CONCLUSION

The Court recommends granting pain and suffering damages as follows:

| Plaintiff | Pain and Suffering Damages |
|---|---|
| Manuel Gonzalez | $5 million |
| Renato Olaes, as the Personal Representative of the Estate of Dalisay Olaes | $7 million |

These Plaintiffs should be awarded prejudgment interest at a rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001, until the date of the judgment. They should also be permitted to submit additional applications for damages, including punitive damages, consistent with any future rulings of the Court. Any Burnett

personal injury plaintiffs not appearing in this motion who were not previously awarded damages may still submit applications for damages awards in later stages.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:    April 11, 2025
          New York, New York

\*          \*          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have 14 days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); see Fed. R. Civ. P. 6(a), 6(d). These objections shall be filed with the Court and served on any opposing parties. See Fed. R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable George B. Daniels if required by that judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to Judge Daniels. See Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. James, 712 F.3d 79, 105 (2d Cir. 2013).